We'll hear argument first this morning in Case No. 15-5238, Nichols v. United States. Mr. Hansmeier. Mr. Chief Justice, and may it please the Court, until three weeks ago, a sex offender who moved to a foreign country was not subject to any Federal registration requirement in the United States, unless and until he returned to the United States. Below, the Tenth Circuit nonetheless held that it is a Federal crime for a sex offender who moves to a foreign country to fail to report that move. The Tenth Circuit was wrong for three overarching reasons. First, SORNA's text does not include a requirement to unregister. Second, SORNA's statutory history reveals that if Congress wanted to include a requirement to unregister, it would have done so, just as it did before SORNA's enactment. And finally, a requirement to unregister is unnecessary, because all 56 jurisdictions require sex offenders to unregister. Failure to do so is a violation of the jurisdiction's law and not a Federal law. Ginsburg. That would be true of Kansas law in this case. It would have violated the Kansas law, is that true? He had a requirement to tell Kansas of his departure, correct. How does it work normally? Say a person under SORNA leaves Kansas and goes to Illinois. He registers in Illinois. Is there any obligation, one, for him to register or deregister in Kansas? And does Illinois have an obligation to notify Kansas? Correct. So what happens in practice is that SORNA sets minimum Federal standards. And those minimum Federal standards are supplemented by the States with additional more stringent requirements. One of those more stringent requirements is the obligation to unregister. And, yes, Kansas has that obligation. So in your hypothetical, Justice Ginsburg, that individual has to unregister in Kansas under State law. And when he gets to Illinois, that's the Federal requirement to tell Illinois to register, to update the registration in Illinois, because that's the jurisdiction where he resides. And then Illinois, under 16921b3, will tell Kansas of the move. They're required to do that. Kansas in addition to the other venues. If there are any. So it would be both Federal and a State requirement. But in one case it's on the SORNA person, and the other, it's the other State. I think that's correct, yes. Under U.S. Roberts, what sense does it make if you have Federal law that says we're going to add these sanctions when you violate the State law, and in the one case, if you don't register, you're triggered, and the State law says, well, you've got to unregister too. But if you unregister, if you don't unregister, that's not included under the Federal law. Why would Congress draft a law like that? Well, I think they would have done that because, and if you look at the legislative history, I think this is somewhat clear, what Congress was concerned about were missing sex offenders, not at initial registration, but when the sex offender crossed State lines. So by requiring registration when you get to the jurisdiction, that was the aim, because that's when offenders were going missing. Now, the departure jurisdiction would be a relationship between, very much a relationship between the State and its citizens. And that's played out if you think of a State sex offender who could live in Kansas. And if he were to have a Federal requirement to unregister in Kansas, that's actually not enforceable under SORNA because the travel has to come after or before he can't register. So if Mr. Nichols were a State sex offender and he's only committed an offense when he leaves Kansas, and that doesn't, and that's a problem if we're saying that there's a Federal requirement to unregister in the departure jurisdiction. Now, that may work for Federal offenders, but I think the idea is that there are Federalism concerns underlying SORNA, and those Federalism concerns come into play when an individual crosses State lines, and that's the minimum requirement in SORNA. Roberts Well, but there's no problem to require him to register, but all of a sudden there is a problem to require him to unregister? Well, it's not a problem. It's just SORNA left it to the States. They left the unregistering to the States, but not the registering. Correct. Not the updating the registration in a new State. Correct. Sotomayor I'm curious. You responded to Justice Ginsburg that he did violate State law. Could the United States have asked for an extradition based on the State law violation? Is this a permanent hole, or did they just pick the wrong law to seek extradition under? Well, Justice Ginsburg's example was interstate travel. No, no, no. I'm saying they asked him to be returned from where had he fled to, the Philippines. Okay. Mr. Nichols moved under the SORNA violation. Correct. How would they have asked for him to be returned under the State law violation? Yeah. There's actually a provision in SORNA, I think it's 19 16917, which requires the marshals, Federal officials to assist the States in enforcing the registration requirement. So is that a yes? I think it's a yes. So really what we're talking about is that they asked for the extradition under the wrong law. I think that's exactly right. And Mr. Nichols was also on Federal supervised release. So there was a connection there. The connection to the Federal aspect of it was his supervision. Did leaving the country without notice violate the terms of his supervised release? It did. And he was his supervised release was revoked. He received a 10-month sentence for that. And then they still prosecuted him Federally, and he got another 6-month sentence. It's mentioned in one of the briefs. I don't have the reference to it at hand. What would happen if he decides he's, and this is just all within the United States, no foreign travel. He decides that he wants to move to the West Coast, so he checks out of Kansas. But he's not sure where he wants to live. So he drives to Washington, Oregon, California, takes two weeks. What would the requirement for registration be there? Right. Well, I think it gets a little confusing with the interstate travel because we don't really address it. Because there is a jurisdiction, there is an arrival jurisdiction. I think under our rule, what 16913c says is that you don't unregister, you register in the arrival jurisdiction. Now, there may be. But the arrival jurisdiction is not your residence yet. He doesn't know what it's going to be. He's just there two days, and he's going to go two days, and he's going to look around. Well, I think SORNA doesn't do a good job of this. The definition of residence, they define reside as the location of one's home or the And so I do think that SORNA does not do a good job of this. But I'm not sure that that wasn't unintended. Because if you think about the window, the three-business-day window, that actually creates a system where an individual is not on the registry for a certain amount of time. If you think of a change of name, which you have to report, if you have three business days to do that, there is going to be up to five days where that registry is inaccurate. And that's just the way it is. So I think, although we might not want to admit it, or the reality is that SORNA actually creates these gaps by allowing offenders some period of time to register. And I think Congress did that because it knew the States could supplement SORNA. These are just minimum standards. If you have a textual argument that I understand, but one of the arguments you mentioned at the outset was that an examination of the legislative history shows that Congress intended to produce the sort of result that was produced here. And I wonder if that's really a plausible argument. If you're correct, then two things happen, at least two things happen. One, Kansas retains on its record an inaccurate information about the presence of a sex offender, which can have a lot of adverse consequences for a lot of people. I don't see why Congress would have wanted that to remain. And do you really think Congress was unconcerned about the United States exporting pedophiles to the Philippines or to other countries? Do you think that they were not concerned about not only the human rights implications of that, but our relations with other countries? Well, I think if you look at the legislative history, there's nothing to indicate that SORNA in 2006 had anything to do with international travel. And I think the new legislation is important in this regard, because whether — I don't know that I said intended if I said that I didn't mean it. I think the history of it shows more or less that in 1996, each State had a registration system. One year later, Congress required departure notification, required unregistration. By 2006, that had happened in all the jurisdictions. So I think what I mean by the statutory history is that that's an indication why there was no unregistration requirement put in SORNA, because it existed  Alitoso, if I could then come back to Justice Ginsburg's hypothetical of someone like your client who moves from Kansas to Illinois, what in the language of the statute would prevent that person from going to the registry office in Kansas before departing and reporting there that he was moving to Illinois and his new address in Illinois would be whatever it would be? Why does that not fit under the language of the statute? Or would you agree that it does? Well, I would agree that there's nothing that prevents him from doing that. And I would agree that he should do that under State law. But — Well, if you agree to that, then I don't see why there's a difference between that situation and the situation where the person leaves Kansas and goes to the Philippines. Well, what — but I don't agree that it's a — it's sufficient or a Federal requirement to do it before. That — I think that's the distinction I would make. It's not a requirement. Why would it not be sufficient under 42 U.S.C. 16913C? Well, because that provision is still going to require — and the government, I think, agrees with this — there's still a — the requirement is to report in the arrival jurisdiction. Well, it says, "...shall not later than three business days after each change of residence appear in person in at least one jurisdiction involved pursuant to subsection A and inform that jurisdiction of the change of address." So prior to leaving, he is within the period of not later than three business days after the change of residence. And at that time, when he goes to the registry office in Kansas, he is residing in Kansas, so he falls within subsection A. Well, this is on — the text is on page 11A of the Blue Book. I think what's — the Blue Brief. I think what's important is, if you looked directly above subsection C to subsection B, I think this is what you're really saying Congress did. Subsection B sets forth two subsections, the first of which begins with the word before, the second of which begins with the phrase, not later than three business days after. So I think if Congress had meant to do something structurally similar in subsection C, it would have done it, but it didn't. Instead, it just did not later than three business days after. And I think the change is a trigger, and I think that's — that's key. And it's similar to subsection B-2, where the trigger is being sentenced. And so that event has to happen. That occurrence has to happen before you report it. And so in subsection C, until the change happens, you can't really report it and satisfy this provision. Ginsburg. But now, under current law, under the 2016 change, it's clear that anyone under SORNA who leaves the country has to give notice to the jurisdiction from which he departs. Correct. And the statutory thing — So we're talking about only the people who were pre-2016 people? We're talking about a very small subset, I assume, unless the Federal Government were to go out and indict a bunch of people who have traveled prior to February 8th for this. What bearing on your argument does the last sentence at the bottom of 11A, the last sentence of C, have? That jurisdiction, in other words, the jurisdiction where he registered, shall immediately provide that information to all other jurisdictions in which the defendant is required to register? Here there were none. Well, correct. And typically there may not be. But that language, I think, captures the defendant, for instance, where we come from. A lot of people live in Kansas and work in Missouri. That sentence would capture that situation where there's an employment jurisdiction that's different than a residence jurisdiction. Then the appointment jurisdiction would notify the residence jurisdiction or vice versa. But my question was, does this have significant relevance to your argument here? Does it help? Yes. I don't think it does. I just think it's how it's work. I don't know that it helps. It's. It was a reference to a form that everyone under SONA signs that acknowledges a requirement to register on commencement change, termination of residence, and give 21 days notice before traveling outside the United States. Nichols assigned such a form, did he not? He did. And what you're saying is that that form has no operative effect. The fact that he didn't do what he undertook to do in the form is not a Federal offense. Well, what I'm saying is that that's a State form. That's actually the State of Kansas. So SORNA is implemented by the States. So each State, there's not some Federal form for sex offenders to sign. There are no Federal registration offices. There are no Federal officials who do these things. This is a local thing. A lot of it is County Sheriff's. It would be a State form. Every State would have a different form. So what you're referring to, those are quotations, summaries of Kansas law and not Federal law. Because if you're in Kansas, you have to, you are required to register, to update your registration as required by Kansas law, which is much more in-depth than Federal law. And so that's where that language comes from. But it's the same register that is, you said there's no separate Federal entity. So all these requirements in SORNA would be satisfied by informing the State office, is that? Well, I'm saying in practice that's what has to happen. There's no Federal person you can tell. You register with the State people. Sotomayor, I find interesting the new legislation. As I see it, it's getting away from where you reside or anything else. It just says if you're going to travel to a foreign place, you have to tell the United States, correct? Is there anything in that law that requires the U.S. to tell the State the person has left, that they've left? I think there is a provision for that. I didn't have a complete chance to go through it. I don't know that that provision made its way into the government's supplemental brief. Yes. I think at 4A, if I'm reading this correctly, there's an implementation provision. So the problem at issue here has been completely resolved by new legislation. Oh, I think that's absolutely true. I think if there — whether there was a gap or not, whether it was intended or not, the bottom line is that it's gone away and there's no reason to take an atextual interpretation of 16913C. I do want to mention something this Court said in Reynolds, because I think this Court is on the same path as us. Reynolds was the second SORNA case that the Court heard. And there was a point at which in Reynolds where the Court is talking about the defendant, and it says that he was in prison, he was released, he registered in Missouri, but he moved to Pennsylvania. And it says, without updating his Missouri information, and then this Court puts in parentheses, as Missouri law required, and without registering in Pennsylvania. And then it goes on to talk about how the failure to register in Pennsylvania is a 16913C offense. That's our position. And I think this Court — you said it in Reynolds. It had nothing to do with the holding. But I do think that's — that's in this Court's mind, at least. And I do want to note that the government's reading, defining the supplemental jurisdiction as one where the defendant appears as a resident on the — on a registry creates a really weird situation where Mr. Nichols, when he lived in the Philippines, because he still appeared on the Kansas registry, under SORNA he still lives there. He still resides there. And that's just not right under the statute in the way SORNA defines resides. And it's just not right as a matter of common sense. I mean, you don't reside in Kansas when you actually live in the Philippines. And with that, if there are no further questions, thank you. Roberts. Thank you, counsel. Mr. Gannon. Mr. Chief Justice, and may it please the Court. SORNA required Petitioner to register and to keep his registration information current. This is not an unregistration requirement, but a requirement to keep his registration current in the jurisdictions where he was registered by timely giving notice of any change of residence to at least one jurisdiction involved. And we disagree with Petitioner. We think Kansas was a jurisdiction involved pursuant to subsection A here, both because of the meaning of that phrase, which is more capacious than just taking down the phrase that appeared in subsection A, and also because it's reinforced by section 16, 921B3. Is it your position that he was required to notify Kansas both that he was terminating his residence and that he was moving to the Philippines, or just that he was terminating his residence? Here it's just that he's terminating his residence. He could have given information about where he was going. But he was not required to? But that is not what he was being required to do here. He was being required to keep his registration information current by saying where he will reside, where he is residing, and he will he is no longer going to be residing here. The phrase that you I think your answer was clear, but I didn't understand it. Would it, in your view, would it have been compliant with SORNA simply to say I am leaving Kansas, period? That would have complied with his obligation to keep his registration information current with the jurisdiction involved, yes. That we do think that section 16914A3 allows him to report where he resides or will reside, and therefore he can report future information, and therefore the guidelines promulgated by the Attorney General in 2008 said that normally when somebody is moving from one jurisdiction to another jurisdiction, he should tell Kansas, I'm leaving Kansas and this is where I'm going next, so Kansas can give that other jurisdiction warning. But the Philippines is not a jurisdiction under the statute. That's correct. And so what we think is key here is that Kansas is still a jurisdiction involved pursuant to subsection A. Congress didn't say a jurisdiction described in subsection A. It said a jurisdiction involved pursuant to subsection A. All right. How is that the case since subsection A refers to each jurisdiction where the offender resides, is an employee or a student? When he's in the Philippines, there's no such jurisdiction covered by SORNA where he resides, is an employee or is a student. That's correct, Mr. Chief Justice, but we think that that's not the only thing that is pulled in by the phrase jurisdiction involved pursuant to subsection A. He is required to register while he's a registrant in Kansas. He's required to keep. But how is that? Where is under A something that says it's the jurisdiction where you used to be required to register? It's the part that says he has to keep the registration information current. And subsection C informs us what it means to keep the registration information current. That's further down on the page. This is page 7A of the government's brief. Well, but he only has to keep the registration current if there is a jurisdiction where he covered jurisdiction, where he resides as an employee or as a student.  place in the Philippines. Well, we disagree that Kansas is not a jurisdiction involved. But even if it were not such a jurisdiction, subsection C requires him to give notice to at least one jurisdiction. And as Justice Alito has already explained, it is also the case here that he could have complied with that by giving the notice before he left Kansas when he was in dispute. Well, right, but he doesn't have to comply with it until later than three business days after there is a change. That's not. So he shall not later than three business days after each change? That's not true? It is true that he has to comply with it not later than three business days. He doesn't have an option of just not doing it. And so if he can't comply with it on business day one or business day two or business day three thereafter, then maybe he should have complied with it by informing Kansas before he left. Well, maybe he should have. Maybe he should have. But he may also have thought when it says at least one jurisdiction involved pursuant to subsection A, and subsection A says where he resides, that maybe there is no jurisdiction involved under the statute. But it does say where he resides, but it also says he has to keep the registration information current there. And we think that section 169 requires in the jurisdictions where he has been registered, where he is residing, and, and, and. But it is current at all the time in which he resides there. That is true. I certainly take the point, but we think that Congress is using a more capacious phrase in subsection C when it says jurisdiction involved pursuant to subsection A. Kansas is inescapably involved because he has been registered there. And we think that this is reinforced by section 16921.3, which was in the statute. Kagan, you are just reading pursuant to subsection A out of the statute. No, I'm reading it to mean something. But it tells you excuse me, Mr. Gannon, it tells you exactly what it means to be a jurisdiction involved. It means a jurisdiction involved pursuant to a particular subsection which focuses only on his current residence. And all the time he was a current resident of Kansas, the registry was accurate. I understand that, Justice Kagan, but our view is that this is not the same as saying a jurisdiction described in subsection A. It's a more capacious word to say it's involved pursuant to subsection A. We know that Kansas is involved here. And section 16921b3 makes it clear that Kansas continues to be involved because that's the provision that says that as soon as the new change in residence information is conveyed to at least one jurisdiction, that jurisdiction has to give it to every jurisdiction from or to which the change of residence occurs. Roberts, I understand your argument about 16914a3, but how many — what's the past penalty for — the maximum penalty for violating this provision? I believe it's 10 years for violating the Federal provision. Ten years. So you think somebody is supposed to look at this and say, he thinks, should I register? Obviously, he doesn't want to register or unregister, whatever it is. He says, okay, it says involved, but that's different than described in. And A says jurisdiction where the offender resides, and there's no place to register where he currently resides. And then he's supposed to say, ah, but 16914a3 says resides or will reside. And that's an awful lot to ask a layperson to parse at the penalty of 10 years for being wrong, for a registration violation. It's also a State law offense, and he signed notices, as Justice Ginsburg pointed out, explaining that he had an obligation to report the termination of his residence to Kansas. Ginsburg. Why wasn't the State violation pursued? So he's in the Philippines, and he's extradited because of the government's reading of SORNA. But he did commit an offense, it's conceded, under State law. That's true, Justice Ginsburg, and that's going to be true in virtually every single case under section 2250. Why wasn't the extradition sought under that, which is clear and certain, instead of a provision where there has to be a strained interpretation? Well, maybe we should have sought that as well, but we did think that we had a strong Federal interest in this particular prosecution for multiple reasons. He was a Federal sex offender, and as the Court has already recognized, the United States has a special interest in ensuring that Federal law. Breyer, in your interpretation, let's look at this. It's the word involved, and you're saying it means ever involved. Is that right? No, it means involved at the point in time during the three business days where the change in residence has happened and needs to be notified. And so we do think that that's the sentence. I see. In other words, it doesn't mean ever involved, and it doesn't mean now involved. It means involved during the three business days where da, da, da, da, da, da, da. And a person is supposed to understand that. In fact, you're supposed to read that into the silence. It means that. Now, that's, to me, a little far-fetched, would you say? No, I don't think it's far-fetched, because I think that it means it's involved as a jurisdiction involved in the change. It's a jurisdiction that was involved. No, it's involved in the change in residence, because we know he's changing from Kansas to somewhere else. And so Kansas is inescapably involved in that change in the information. All right. I'm trying to understand it. It is a jurisdiction that is involved in a special way. It is a jurisdiction that used to be a residence, and it is no longer a residence, and that creates an involvement even after they're no longer a residence. You know, the more I explain it, the less I understand it. That may be my fault. Well, perhaps it's mine as well, but I think that it's involved because he is still registered there as a resident. And we know that the fundamental purpose of this law in order to have a sex offender registry is to provide an accurate listing of where sex offenders reside. Breyer. I'm only for purposes, but this one is a little tough, because as I read it, literally, at all, I don't get an interpretation. I mean, you could do the same thing. You're supposed to be, and you seem to be saying that. Look, you said that you're supposed to, they're supposed to keep the registration current. Now, maybe there's a requirement somewhere that says when you're thinking of leaving, before you leave, you have to go tell the people before you leave of where you're thinking of going. So then I looked up what you have to have in here, and it says the Attorney General can have regulations that would say something like I just said, but I take it there are no such regulations. And I take it when it says, you know, the kinds of things you have to report, I guess, you know, you could get something like that out of it, but you're not arguing that. No, we're arguing that he has an obligation to ensure that the information in the registry is current, that the purpose of the registry is to enable us to have a listing, to have the jurisdiction have a listing of where sex offenders reside, are employed, or are a student. And it has failed in that purpose if it inaccurately says he is living in Leavenworth, Kansas, when that is the one place that he is not living. Breyer. He has been living for 15 years in the Philippines, where he is employed. He now changes his employment, and he goes to work in Thailand. Now, does he have to tell Kansas? No. Because? Why is it? I mean, Kansas was once involved. No, because Kansas was not a registration where he was listed as being employed. If he were moving his job, his employer would ask him. Oh, all right. What he's done is he's lived in the Philippines for 15 years. And now he's changed his residence to South Korea. Does he have to tell Kansas? No, Justice Breyer. Because? We believe that this requirement is about updating the registration information associated with his residence in Kansas. And we think that Kansas remains involved so long as the registry says he is living in Leavenworth, Kansas, and he has not yet given jurisdiction notification to at least one jurisdiction, that that's no longer true. It seems to me that what you are saying is that each of these offenders is supposed to recognize the underlying purpose of the law, which is to have accurate registries, and to do everything he can to serve that underlying purpose. And we would — you know, it would be good if everybody did that. But the text of the law is something different. And if you look at this text of the law, there's just no way that a reasonable reader reads that text and says it requires me to provide departure notification when I leave to another country. So you can say, well, he's supposed to keep it current, and that's right. He is — he should keep it current because we would all like sex registry. But the statute provides very specific details about what it means to keep it current, and it seems to me he has conformed with every single one of those requirements. And we just don't think that's true because Kansas was a jurisdiction that he could have informed while he was still a resident. That doesn't even require this reading of the statute. Kagan You know, he could have, and he should have, but he didn't have to under this statutory language. But it is subsection C that provides the content for what it means to keep the registration current, and it says you have to inform at least one jurisdiction. He informed zero jurisdictions. That's the problem here. It says he has to have informed at least one jurisdiction involved pursuant to subsection A, and subsection A makes clear that the only jurisdictions that they're talking about are the jurisdictions in which he currently either lives, works, or is a student. And that was true the morning before he left Kansas and the morning he was going to move out of his apartment, and he could have said today is my last day in Kansas, I'm a resident right now. But by the end of the day, everything was current. And then when he left Kansas, he's not subject to this statutory provision anymore. He's subject to the provision that requires him to keep it current. He's given a three-business-day grace period, but if he fails to comply with it by the end of the three-business-days anywhere, that's what we think the problem  And so we do think that he could have done it. Ginsburg You agree that the problem has been cured, prospectively. I think that the new statute captures this type of conduct effectively incidentally, because the new statute actually talks about a much broader category of conduct. It talks about intended international travel. It doesn't talk per se about changes of residence, but it does require you to report your itinerary and the purpose of your travel, and therefore we would expect it to pick up this information. Ginsburg So who is left out under the new law that would be covered under your reading of the old law? I don't think any – my point is not that somebody is left out under the new law. My point is that the new law captures many more people. Ginsburg I'm trying to find out what is the effect of a ruling one way or another. It's a relatively small category and there is no problem prospectively. Is that right? Yes. And we acknowledged in our brief opposing certiorari that we thought that this affected a small category of cases. That was, of course, before the new statute took effect. And so we do think that there will now – this type of conduct will now be captured under the new statute. But we don't think that the new statute indicates that Congress did not think this conduct was captured under the old statute, because it is directed at a much broader category of conduct. Roberts I understood – if I understood it correctly, there is still a category of people under your interpretation today that would not be covered under the new law, because you have to file an itinerary, right? Yes. Okay. Well, okay. This person files an itinerary saying I'm flying to the Philippines. And if he takes up residence there, then he's still violating the law under your interpretation? Well, that would be true, Mr. Chief Justice, except that the language that we are talking about here is the new subsection, it would be new 16914A7. And it includes not just the itinerary, but also the offender has to report the means and purpose of travel. And so we are expecting that the purpose of travel, if it is purported to be the same as the purpose of travel. So if his purpose is I'm going to visit the Philippines, and while there he decides I'm going to set up permanent residence here, then you would be able to prosecute him under this provision, even though the new law doesn't cover it? Well, I think the purpose is to visit the Philippines, and while in the Philippines, he decides to set up residence there. Well, then I think that would raise a separate question and would mean that because his purpose had changed, we would have to find out whether the Attorney General's time and manner implementation of this provision, which is also authorized under the new statute, requires him to report such changes in purpose after he is already in the Philippines. And if so, and he doesn't say, well, I thought I was here on vacation, but it turns out I'm moving my residence, so that may well turn out also to be a violation because he needs to report the purpose of his travel has changed. But my point is just that even though Congress has now addressed intended international travel and is expecting this to be reported in advance, as the title of the new statute indicates, and therefore we wouldn't have to have this debate about whether this is a jurisdiction in which he is currently residing when he says, I intend to fly to the Philippines in 21 days, that debate would be mooted out by the new statute. So you read 1691.3a as saying where the offender resides or resided, is an employee or was an employee, is a student or was a student. I don't think that that's the way we're reading the provision, Mr. Chief Justice. We're saying that there are two obligations there. One is to register and the other is to keep the registration current. And if you allow the registry to have inaccurate information, that when it, where you look up your current address and it's not your current address, then you violated that obligation. And we think that subsection C provides additional explanation as to what it means to keep the information current. And it says, you know what? You don't have to give advance information, advance notice that you're going to be changing your residence. You can do it up to three business days thereafter, but you have to inform at least one jurisdiction involved. And we think that in that situation, especially because another provision of the statute makes it clear that the jurisdictions that are entitled to the information about the change in residence include those from and to which the change in residence is made. They get the information. They are involved in, in, in. Kagan. That one, it's 16921B, is that the one you're referring to there? That's correct, 16921B3 which is on 11A of the government's brief. But 16921B3 is specifically an obligation that's placed on officials. It has nothing to do with any obligations on offenders. That is true, Justice Kagan, but what we think it reveals is that it is telling us which jurisdictions are involved in the exchange of information that is at issue in the change of residence. But an offender is supposed to look at a statute that places only an obligation on State officials and to say, really, that obligation applies to me as well? We think the offender is supposed to look to the notices that he received which said he was supposed to provide notification of every change of address. I think any reasonable person, when told that he has to give notification of his change of address, says, oh, if I decide I'm moving out of the country, I don't have to tell everybody, anybody, that that, that is actually contrary to a common sense reading of this provision. And we know that the notice reinforces the idea that he does have to inform Kandis. Now, as Petitioner says, that's clear as a matter of State law. We also think that it's, that it's part of the minimum requirements of SORNA. And we don't think it's sufficient for the Court to say, well, Congress expected this to be a State law prosecution and didn't want there to be a Federal law prosecution, because that would be true of virtually every single violation of section 23. Breyer, they might have, but it's the language that's bothering people. And what I'm trying to see if there's support for this word involved, which I hadn't really thought of. And, and let's imagine he leaves Kansas, he left on Monday, it's now Tuesday. So he doesn't reside in Kansas anymore. He's now over residing, he's not there anymore. So is Kansas still a jurisdiction involved pursuant to subsection A? And your answer is yes. And I say, okay, you mean any jurisdiction that he ever, no, you say it's not, doesn't mean ever. I say, does it mean involved right now? No, you say it doesn't mean that, because if it's involved right now, it isn't. You mean it was involved two days ago. And now you have a general definition of that, and you mean it was involved because it was the last jurisdiction in which he actually resided. That's what you do. Now, is that basically it? No, not precisely it. We mean that it is involved because he has not told them, I am no longer living in Kansas. No, that can't be reason to be involved, because he didn't, I mean, there are a lot of people he didn't tell. I mean. They are involved because he, he is on the rolls there as being a current resident. Okay. All right. All right. In other words, where he is on the rolls as being a current evidence, be careful, because you will run into Thailand, you know, the guy moved 15 years later. Except he is not going to be on the rolls there. Oh, he will be on the rolls in Kansas, because they never took him off. And now it's 20 years later. So you can't mean that. Then he violated. Let's take what you do mean. And now, now, now, I have an idea of it. What support is there for that? Is there support in a regulation? Is there support in some previous case? Is there support? And I'm thinking, focusing narrowly on your interpretation of the word involved. There is support in the Attorney General Guidelines to the extent that the Attorney General Guidelines adopted in 2008, and we are not claiming Chevron deference to them, but this has been our construction of the statute all along. The Attorney General Guidelines are reprinted at the end of our brief, and they specifically say that he is obliged, in order to keep his registration information current, to be. Sotomayor, please. This is at page 22A. It says, ''Even if he doesn't know where he is going next, he is required to keep the registration information current by informing the jurisdiction if he is terminating his residence, employment or school attendance in the jurisdiction.'' That's true in the domestic context. And then if you go on to page 24, it articulates the same requirement in the context of needing to keep the registration current in jurisdictions where someone resides when you're moving out of the country. This is not an administrative law provision. It's a criminal statute. The Attorney General's Guidelines can't expand a fair reading of what Congress made illegal under Federal law. We're not claiming that the Attorney General has expanded the text of the statute, Mr. Chief Justice. I'm just saying that this is the way the Department of Justice has been construing the statute since 2008. Jurisdictions implementing the statute understand this, and they've been informing sex offenders that they have this obligation. Roberts Given what I just said, my answer is so what? So what if the Attorney General has been construing this since, you know, 1875? It cannot do anything to expand the words that Congress used. That's – if you disagree that this is a fair reading of the statute, I'm not going to tell you that the Guidelines make it a fair reading of the statute. What you're saying is the Attorney General thinks it's a fair reading of the statute. So I should think it's a fair reading of the statute. Well, I'm also telling you that we think – I'm telling you that we think we have good reasons for this construction, and Justice Breyer asked if there's anybody who's ever adopted this construction before, and I say, yes, the Attorney General publicly did so in 2008. All SORNA implementing jurisdictions were told this is the way the Federal Government reads the statute, and they're supposed to inform sex offenders of this. In this instance, Kansas has informed Mr. Nichols that he has an obligation to provide notice when he is terminating his residence. They've gone above and beyond what SORNA requires by always demanding that he inform Kansas, even though SORNA, under our reading, would allow him to inform any one jurisdiction involved. We think – Just to – I probably should know this, but Kansas requires him to list any change, right? He has to unregister? He has to report any change in the residence information, yes. Right. What sort of language did they use? That their language does – specifically says he must register any change or termination of residence within three days to the registering law enforcement agency or agencies where last registered. So that's the instance in which – Where last registered. Where it specifically picks up and says you have to go back to where you last registered. We think that goes beyond – that's the way in which Kansas law goes beyond SORNA, because SORNA does not always require that. We think that in a situation like this, SORNA effectively required that because there's no other place for him to have gone. But we also take Petitioner's concession that SORNA permits him to comply with the requirement to keep his registration current by going to the office in Kansas. And it's the same form. There's no doubts that it's possible for him to report the change in residence there. The form says what is your address, and it has location start date and location end date, and those can be reported in advance or after the fact. Our position is just that when SORNA gets around to saying what it means to keep your registration information current, you have to do that in at least one place within three business days. And so we think that that means he could do it in Kansas even the day after he moved. If you disagree with that, we still think it also must mean at least, as Justice Alito was explaining, that he has to do it, he has to comply with it by doing it while there still is one jurisdiction. There's no doubt that Kansas was a jurisdiction involved while he was still residing there. Could I ask a question, Mr. Gannon, of absolutely no legal significance? Let's chalk it up to curiosity. Does the Federal government bring many of these prosecutions? Because I might have thought that when sex offenders leave the country permanently, the attitude might be like good luck and good riddance. Well, I take the point, Justice Kagan, but remember, this is somebody who is not just a Federal sex offender. He's on Federal supervised release. The notion that we have somebody on Federal supervised release, we're supposed to be keeping track of him and making sure that he's not committing additional crimes.   And I'm just curious, as I understand the requirement that even you say he's subject to, it's just a requirement that says he's leaving the State. It doesn't — he's not required to tell you where he's going in the world. He could be going to the Philippines or any other country. So it doesn't really help us in terms of, you know, helping our allies deal with sex offenders. I'm just curious why it is that people — why DOJ makes the decision to bring sex offenders back to this country in such circumstances? Well, as I said, he was a Federal sex offender who was on Federal supervised release who appeared to be on the cusp of committing additional Federal offenses in the Philippines. And so we brought him back, and we do think that there's a Federal interest in this case, but Section 2250 includes cases where somebody is also violating State law, because by definition, all of these registration requirements in SORNA much of the time are also going to be violations of State law. And so in this instance, the problem is that the registry was inaccurate. It's supposed to say where he's living. I am right, right, that when you say he had the responsibility to keep the registry accurate, that's just to say he had the responsibility to tell Kansas he was no longer in Kansas. That's right. Even on your view, he had no other responsibilities. That's the applicable responsibility here. That's right. In terms of Federal — How do we know — I'm sorry. Please. I mean, in terms of Federal policy, hasn't Congress, by the enactment of the new statute and in other ways, evidenced a belief that the United States should not be exporting its pedophile problems to other countries? Yes, Justice Alito. And countries like the Philippines, where the Petitioner here went, are known places that are attractive to sex tourists who go there to abuse young children, and hasn't Congress evidenced concern about this, both for the human rights aspects of the problem and also, I would think, for relations with the government of the Philippines? Absolutely, Justice Alito. And it would have been a Federal offense for him to have engaged in sexually illicit conduct in the Philippines. Well, I completely understand that, Mr. Gannon, but even your own interpretation doesn't get you the information. I knew we should have paid that bill. My red light on the bench is still working. It does not get you the information that you need in order to tell the Philippines, look, you have a sex offender in your midst. That's correct, Justice Kagan. And the new statute does that, as did the supplemental guidelines that the Attorney General adopted in 2011 under SORNA as additional information that was required. That's not what's at issue in this particular case. What's so interesting is that regulation tells the States to do this. It doesn't tell the sex offender that he's obligated to do it. It says the States must do this. It's a little bit odd. It's true that the guidelines were addressed, both the guidelines and the supplemental guidelines were addressed to implementing jurisdictions. They were articulating the Federal government's construction of the statute and what we thought is required. So now a sex offender is supposed to understand what involved means and read a directive to jurisdictions in your regulation and say, ah, that includes me, too. Well, we know we're supposed to do this, but now I've got to do something more. Well, but what the jurisdiction was told is that it has to inform sex offenders that they must do this, and that happened here. Kansas informed him that he had to provide notice of any termination or change in his residence. That's what was required by SORNA. Sotomayor, what makes it a State as opposed to a Federal crime? That's really what's at issue here. I understand it's a crime. The question is what kind of crime. Yes. And in this instance, Petitioner acknowledges it's a State crime. It is also a Federal crime, Mr. Chief Justice, may I finish answering? Under Section 2250, because he's a Federal sex offender, there doesn't even need to be independent travel. It's the violation of the SORNA requirements that makes it a Federal offense. Thank you, counsel. Mr. Hansmeier, you have 11 minutes remaining. Sorry, Mr. Chief Justice, I don't think I actually reserve time for rebuttal, so thank you. I forgot to say that, but thank you. I would – Justice Breyer, if I can, and I'll be brief. On the guidelines, this is actually a direct quote. The – according to the Department of Justice, a jurisdiction may require that changes in registration information be reported by registrants on a more stringent basis than the SORNA minimum standards. For example, requiring that changes of residence be reported before the sex offender moves rather than within three business days following the move. I mean, that's our position. I don't – there are other portions in the guidelines that direct jurisdictions to do this, but that – but what the guidelines say right there is exactly what we say, that it is a more stringent requirement. A few other points on the word current. I think if you look in the – in the – there's a provision on in-person verifications where there's a requirement for a current photograph. That word clearly doesn't mean future, and I think that's important to understand that when you're talking about current information, it's not future information. I think Justice Kagan mentioned that a few times. On 1621 – 16921b3, again, that's language directed toward the jurisdictions. That's not a requirement for the offender, and that's how the former jurisdiction would be informed of the change. And if there are no other questions. Roberts. Thank you, counsel. The case is submitted.